**SO ORDERED.**

**SIGNED this 02 day of March, 2007.**



_____
Dale L. Somers
**UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In re:<br><br>JEREMY KENNETH SCHOEN,<br><br>DEBTOR. | CASE NO. 06-20864-7<br>CHAPTER 7 |

**OPINION DETERMINING A DEBTOR'S ABILITY TO PAY CAN BE CONSIDERED ON A MOTION TO DISMISS UNDER 11 U.S.C.A. § 707(b)(3)(B)**

This matter is before the Court following oral arguments on February 21, 2007, for a ruling on the United States Trustee's motion to dismiss or convert. The U.S. Trustee appears by counsel David P. Eron. The Debtor appears by counsel Drew Frackowiak. The Court has reviewed the relevant materials and considered the arguments, and is now ready to rule.

This dispute concerns certain provisions added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[1] Under 11 U.S.C.A. § 707(b)(1), this case may be dismissed if the Court "finds that the granting of relief would be an abuse of the provisions" of Chapter 7. The question the parties are asking the Court to decide is whether the new means test for "abuse" established by § 707(b)(2) precludes considering a debtor's ability to pay as part of the "totality of the circumstances" test for "abuse" established by § 707(b)(3). A number of courts have already issued opinions addressing this question and, so far as the Court is aware, they have all concluded the debtor's ability to pay can be considered under § 707(b)(3). As explained below, the Court agrees with that conclusion, but believes the parties must present evidence before the Court can determine whether granting relief to this Debtor would be an abuse of Chapter 7 of the Bankruptcy Code. The Debtor may, of course, choose to convert the case to Chapter 13 rather than continue to contest the abuse question.

**FACTS**

The parties submitted a stipulation of facts for purposes of the motion to dismiss or convert. The Court has supplemented the stipulation with information revealed during the arguments, and by reviewing other pleadings filed in the case.

---

[1] Pub. L. No. 109-8, 119 Stat 23 (enacted April 20, 2005, mostly effective October 17, 2005).

The Debtor filed his Chapter 7 petition on June 22, 2006, and his debts were primarily "consumer debts." The parties stipulated that the Debtor was unemployed for "a substantial portion of the six months" before the month during which he filed his bankruptcy petition, which caused his annualized "current monthly income" as calculated on Official Bankruptcy Form B22A to be less than the applicable median family income in the state of Kansas. Consequently, no presumption of abuse arose under the means test established by § 707(b)(2). Furthermore, in a Chapter 13 case, because the Debtor's "current monthly income" was below the Kansas median, his "applicable commitment period" would be thirty-six months, meaning he could only be required to devote his projected disposable income for thirty-six months to a Chapter 13 plan.[2] Despite the stipulation about the Debtor's unemployment (which the U.S. Trustee said during arguments had been for five of the six months), they also stipulated that he did not file for bankruptcy "as a consequence of . . . unemployment, or similar calamity," but only as a result of substantial debt and inability to remain current on his monthly payments.

In his schedules, the Debtor reported owing secured debts of $146,167, priority debts of $18,412.97, and general unsecured debts of $57,777.43. Nearly all of the secured debt, $145,000, was owed on his home, which he planned to surrender to the secured creditor. By January 2007, the Debtor had moved out of the home and into an

---

[2]*See* 11 U.S.C.A. § 1325(b)(1)(B) & (4)(A).

3

apartment. The Debtor's priority debts were taxes owed to the IRS, and to the Kansas and Missouri Departments of Revenue.

A month before he filed for bankruptcy, the Debtor started working for IBM. The parties stipulated that after reducing his expenses by moving from his home to an apartment, the Debtor would have about $845 per month in disposable income he could devote to paying his creditors, which would provide $50,700 if paid over sixty months. During arguments, Mr. Eron indicated he had seen amended schedules showing the Debtor's actual monthly disposable income would be $500 to $600 per month.[3] If he were to pay $500 per month for thirty-six months, the Debtor would pay $18,000 into a Chapter 13 plan; at $600 per month, the total would be $21,600.

The U.S. Trustee filed a motion to dismiss or convert the case, claiming the totality of the circumstances of the Debtor's financial situation showed that granting him a Chapter 7 discharge would constitute an abuse of the provisions of Chapter 7, in violation of § 707(b)(3)(B) of the Bankruptcy Code. The Trustee's motion was timely because it was filed less than sixty days after the first date set, pursuant to § 341(a), for the meeting of the Debtor's creditors.[4] After the parties submitted their stipulations of fact, the Debtor filed a response to the Trustee's motion, the Trustee replied to the response, and the Debtor responded to the reply. The main point disputed by the parties, and the only point

---

[3]As of February 26, 2007, no amended schedules of the Debtor's income and expenses had been filed.

[4]*See* Interim Federal Rule of Bankruptcy Procedure 1017(e)(1).

the Court intends to resolve in this opinion, is whether a debtor's ability to pay some or all of his or her debts can be considered in deciding a motion to dismiss that is based on § 707(b)(3).

**DISCUSSION**

Before the BAPCPA took effect, § 707(b) authorized bankruptcy courts to dismiss a Chapter 7 case filed by an individual debtor with primarily consumer debts if granting relief to the debtor "would be a substantial abuse of the provisions" of Chapter 7.[5] There was a presumption, however, in favor of granting the relief the debtor sought.[6] Under this provision, most courts, including the Tenth Circuit, had ruled the debtor's ability to pay his or her debts out of future earnings was a primary factor to consider in determining whether granting relief would amount to substantial abuse.[7] Significantly, the Tenth Circuit had directed bankruptcy courts to apply a totality-of-the-circumstances test for deciding substantial abuse questions.[8]

The BAPCPA dramatically modified § 707(b). First, in subsection (b)(1), Congress reduced the standard for dismissal from "substantial abuse" to "abuse," and eliminated the presumption in favor of granting the debtor relief. Next, in subsection (b)(2), Congress created a detailed and complicated mathematical test for evaluating the

---

[5] 11 U.S.C.A. § 707(b) (Thomson West 2004).

[6] *Id*.

[7] *See In re Stewart*, 175 F.3d 796, 808-10 (10th Cir. 1999) (citing decisions by the 1st, 2d, 4th, 6th, 8th, and 9th Circuits).

[8] *Id*. at 809.

5

debtor's income and expenses to determine whether a presumption of abuse would arise. When that test raises the presumption of abuse, the case must be dismissed unless the debtor can show "special circumstances" that overcome the presumption. Finally, in subsection (b)(3), Congress provided that when the presumption under subsection (b)(2) either does not arise or is rebutted,[9] courts can still find abuse if "(A) . . . the debtor filed the petition in bad faith" or, as relevant in this case, if "(B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." The use of the phrase "totality of the circumstances" suggests that Congress intended to incorporate into subsection (b)(3)(B) the test applied by courts like the Tenth Circuit, and the legislative history seems to confirm that intent.[10]

Because courts had essentially all considered a debtor's ability to pay to be an important factor under the pre-BAPCPA "substantial abuse" standard for dismissing a Chapter 7 case, the Court believes it is very likely that Congress intended for ability to pay to remain an important factor under the BAPCPA's "totality of the circumstances" test for "abuse." Indeed, as one court has said, "What could be more central to the

---

[9]As written, § 707(b)(3) actually says, "In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted . . . ." Paragraph (b)(1) contains no subparagraph (A)(i) and nothing in it mentions any presumption. Instead, paragraph (b)(2)(A)(i) says "the court shall presume abuse exists" under specified conditions. The Court is convinced this part of § 707(b)(3) must be read to refer to the presumption in paragraph (b)(2)(A)(i), and not to anything found in paragraph (b)(1).

[10]*See In re Lenton*, ___ B.R. ___, 2006 WL 3850011, *9-10 (Bankr. E.D. Pa. 2006) (quoting from Bankruptcy Reform Act of 2000 — Conference Report, 146 Cong. Rec. S 11683-02, S 11703 (2000), which discussed prior version of BAPCPA in which § 707(b)(3) appears to be identical to enacted version); *In re Paret*, 347 B.R. 12, 16-17 (Bankr. D. Del. 2006) (same).

6

debtor's financial situation than his income and expenses?"[11] Nothing in the text of subsection (b)(3)(B) suggests an intent to eliminate any aspect of the debtor's finances from consideration in determining whether a case constitutes an "abuse" of Chapter 7. While a number of courts have considered the argument that the means test of subsection (b)(2) precludes considering ability to pay under (b)(3)(B), and at least one law review article has claimed that is the proper interpretation of the BAPCPA version of § 707(b),[12] so far as this Court is aware, no court has yet accepted the argument.[13] If Congress had intended for § 707(b)(2) to preclude considering the debtor's ability to pay as a part of § 707(b)(3), the Court believes it would have included language in (b)(3) to make clear that "the totality of the circumstances . . . of the debtor's financial situation" is not all-encompassing, as the phrase "totality of the circumstances" suggests, but is instead limited in a significant way.

For these reasons, the Court concludes the Debtor's ability to pay is part of the "totality of the circumstances" that must be considered in order to determine whether his case is an "abuse" of Chapter 7. However, the parties' stipulation is inadequate for the Court to resolve the ultimate question whether the case is an "abuse." The Court is

---

[11]*In re Pak*, 343 B.R. 239, 241 (Bankr. N.D. Cal. 2006).

[12]Marianne B. Culhane & Michaela M. White, *Catching Can-Pay Debtors: Is the Means Test the Only Way?*, 13 Am. Bankr. Inst. L. Rev. 665 (Dec. 2005).

[13]*See, e.g., Pak*, 343 B.R. at 241-44; *Paret*, 347 B.R. at 14-17; *In re Richie*, 353 B.R. 569, 576-77 (Bankr. E.D. Wis. 2006); *In re Simmons*, ___ B.R. ___, 2006 WL 3782959, *6-*7 (Bankr. N.D. Ohio 2006); *Lenton*, 2006 WL 3850011 at *8-*10; *In re McUne*, ___ B.R. ___, 2006 WL 3734388, *1-*2 (Bankr. D. Or. 2006).

troubled by the apparent conflict between (1) the parties' stipulation that the Debtor was unemployed for a "substantial portion" of the six months before the month in which he filed for bankruptcy (which the U.S. Trustee said during arguments was five of the six months) and (2) the parties' stipulation that the Debtor did not file his petition as a consequence of unemployment. Since the parties agreed the Debtor's "current monthly income" fell below the applicable median income for Kansas debtors, a fact that means the "applicable commitment period" for him in a Chapter 13 case would be thirty-six months, the Court does not understand why they stipulated how much his disposable income would allow him to pay over sixty months. It also appears the Debtor's income or expenses or both have changed since the parties stipulated that he would have $845 per month in disposable income. Although the parties have not suggested the "abuse" analysis is affected by the fact that more than $18,000 of the unsecured debts the Debtor reported on his schedules are priority tax debts, such debts are not dischargeable in Chapter 7[14] and would be paid from the Chapter 7 estate before his other unsecured debts, so this Court's consideration of the "totality of the circumstances" would be affected by the priority status of those debts. The Court notes that dismissing this case would, in effect, sabotage the Debtor's fresh start because he found a good job before he filed for bankruptcy but after he had suffered at least five months of unemployment. If the case is converted to Chapter 13, in addition to being required to devote much of his new income

---

[14]See 11 U.S.C.A. § 523(a)(1)(A).

to a plan, because he reduced his expenses by surrendering his home postpetition and moving to cheaper housing, the Debtor's fresh start will, in effect, be further hobbled by his being required to pay some or all of those savings into his plan.

In any event, Congress has made it clear in § 707(b)(3)(B) that the Court is to consider everything, — "the totality of the circumstances . . . of the debtor's financial situation" — in deciding whether granting him a Chapter 7 discharge would be an abuse of Chapter 7. Those circumstances include not only his present and projected ability to pay, but also his unemployment history, the reduction of his expenses, and how much money would actually be paid in a Chapter 13 case to his general unsecured creditors, the only creditors whose debts would be discharged in Chapter 7. The Court believes it must hold an evidentiary hearing before it can determine whether abuse exists in this case. The presentation of evidence might well disclose additional circumstances that will affect the Court's abuse determination.

**CONCLUSION**

The Court rules that the Debtor's ability to pay is a factor that must be considered in determining under § 707(b)(3)(B) whether granting him relief would be an abuse of Chapter 7 of the Bankruptcy Code. However, the materials presented are not sufficient for the Court to decide whether abuse in fact exists. It may be that as a result of this opinion, the Debtor will decide to convert his case to Chapter 13 rather than proceed to an evidentiary hearing on the abuse question. If he wishes to do so, he should convert the case no later than March 30, 2007. If not, he should file a pleading by that same date

indicating that he wishes to proceed to trial. If the Debtor indicates he wants a trial or if he fails to take either action by March 30, the clerks should set the U.S. Trustee's motion to dismiss or convert for trial as the state of the docket permits.

# # #